IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KYLE ERICKSON | ) | CASE NO. |
| 5041 W. 15th St. | ) | |
| Indianapolis, IN 46224 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TULSA INSPECTION RESOURCES, INC. | ) | **COMPLAINT FOR** |
| 5202 Marion Waldo Rd. | ) | **DAMAGES AND** |
| Prospect, OH 43342 | ) | **INJUNCTIVE RELIEF** |
| | ) | |
| **Serve also:** | ) | **JURY DEMAND** |
| Tulsa Inspection Resources, Inc. | ) | **ENDORSED HEREIN** |
| c/o National Registered Agents, Inc. | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, OH 43219 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Kyle Erickson by and through undersigned counsel, as his Complaint against the

Defendant, states and avers the following:

## PARTIES

1. Erickson is a resident of the city of Indianapolis, Marion County, Indiana.

2. Defendant Tulsa Inspection Resources, Inc. ("TIR") is a foreign-incorporated, for-profit

   company that conducts business throughout the state of Ohio and others.

3. The relevant location of the events and omissions of this Complaint took place in Marion

   County.

4. TIR is, and was at all times hereinafter mentioned, Erickson's employer within the meaning

   of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq*.

5. TIR is, and was at all times hereinafter mentioned, Erickson's employer within the meaning

   of R.C. § 4112 *et seq*.

## JURISDICTION & VENUE

6.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Erickson is alleging federal law claims under Title VII.

7.  This court has supplemental jurisdiction over Erickson's state law claims pursuant to 28 U.S.C. § 1367, as Erickson's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9.  Within 300 days of the adverse employment actions described herein, Erickson filed a Charge of Discrimination with the Equal Employment Opportunity Commissions ("EEOC"), Charge No. 532-2021-00268 ("EEOC Charge").

10. On February 24, 2022, the EEOC issued and mailed a Notice of Right to Sue Letter to Erickson regarding the EEOC Charge.

11. Erickson received the Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 20000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

12. Erickson has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

13. Erickson has properly exhausted all administrative remedies pursuant to 29 C.F.R. §1614.407(b).

14. Erickson has properly exhausted all administrative remedies pursuant to R.C. § 4112.01 *et seq*.

## FACTS

15. Erickson is a former employee of TIR.

16. At all times noted herein, Erickson was qualified for his position with TIR.

17. Erickson is African American and is therefore in a protected class for his race.

18. Erickson worked for TIR as a Natural Gas Inspector from February 18, 2019, until TIR terminated Erickson's employment on or about May 1, 2020.

19. Erickson was the only African American Natural Gas Inspector during his employment.

20. When Erickson first started, it was typical for him to get crew reports and then go to the job site, typically around 8:00 am or 8:30 am, depending on when the crew reports came in.

21. Erickson's first supervisor, Ed Hewson, told Erickson that, as long as he got to the job site between 8:00 am and 8:30 am, he was fine.

22. Another supervisor, Dave Thornburgh, also told Erickson that reporting to the job site between 8:00 am and 8:30 am was completely fine.

23. On a typical day, Erickson reported to work, and once the crew finished a particular project, he audited their work, filled out the appropriate paperwork and went home. This was standard protocol for natural gas inspectors.

24. Erickson was told that if the crew worked on a particular part of a project that did not require natural gas inspection, he could leave early, since his services were not needed.

25. During Erickson's employment, he often suffered from racial discrimination.

26. For example, use of the word N-word was frequently used on various job sites Erickson inspected.

27. Things went from bad to worse after Shane McIntosh was promoted in April 2020.

28. When TIR promoted McIntosh, McIntosh became a supervisor and/or employer.

29. When TIR promoted McIntosh, McIntosh had authority to discipline and/or terminate McIntosh's employment.

30. After McIntosh was promoted, McIntosh started shadowing Erickson on jobsites with increasing frequency.

31. McIntosh zeroed in on Erickson and nitpicked his work.

32. Disparately, McIntosh did not nitpick overly inspect Caucasian inspectors.

33. On one such occasion, a contractor used the N-word in front of supervisors McIntosh and Thornburgh.

34. McIntosh said, "well hell, you can nigger-rig that pipe up."

35. As a supervisor, when McIntosh used the phrase, "nigger-rig," TIR engaged in race discrimination.

36. A reasonable person would find that a Caucasian supervisor using the phrase "nigger-rig" in front of an African American employee to be severe and/or pervasive.

37. Erickson was offended by McIntosh using the phrase "nigger-rig."

38. Erickson was embarrassed by McIntosh using the phrase "nigger-rig."

39. McIntosh said the phrase, "nigger-rig" on the job frequently.

40. As a supervisor, when McIntosh used the phrase, "nigger-rig," TIR engaged in race discrimination.

41. Erickson was offended by McIntosh using the phrase "nigger-rig."

42. Erickson was embarrassed by McIntosh using the phrase "nigger-rig."

43. Erickson looked at Thornburgh after he made this comment and said, "nigger-rig? Really?"

44. McIntosh continued to use the phrase "nigger-rig" after Erickson objected to McIntosh using this phrase.

45. After Erickson verbally complained to Thornburgh about McIntosh using the phrase, "nigger-rig," the discrimination that Erickson suffered intensified.

46. Erickson's work environment was constantly fueled with racial epithets and slurs.

47. Erickson could not possibly police all of his co-workers, because of their frequent use of the N-word and complete disregard for Erickson's race.

48. As a result of Erickson's co-workers frequently using the N-word, Erickson constantly felt excluded from the rest of his crew.

49. Ericson constantly objected to his co-workers using the N-word.

50. Although Erickson would object to his co-workers using the N-word, his co-workers would continue using the word.

51.  On a daily basis, Erickson endured an onslaught of racial animosity and discrimination from his coworkers because of his race.

52. Erickson developed a good relationship with inspector, Scott Deck.

53. Deck told Erickson that when Erickson first started, he was told by his supervisor, "we got a new Black guy from Indy starting. I want you to go over there to watch him."

54. Deck told Erickson that he told his supervisor "If you want someone to watch [Erickson], you go do it."

55. On May 20, 2020, Erickson arrived in Brookville at 7:30 am, received his crew report, and went to his next job site.

56. On May 20, 2020, while Erickson completed outstanding paperwork, McIntosh called him around 8:15 am to ask where he was.

57. Erickson informed McIntosh he had some paperwork to finish up, and he was held up because he had already left when the crew leader asked him to come back.

58. Erickson finished his paperwork and reported to his worksite for the day.

59. On this day, Erickson's job site finished working at 12:40 pm.

60. Erickson left the job site at 1:00 pm because all of the work was done for the day.

61. When he left work that day, Erickson called McIntosh.

62. McIntosh told him to report to Deck's job site for the rest of the day.

63. Erickson found this request to be odd because usually he was not told to go to another inspector's site.

64. Regardless, Erickson went to Deck's job site, and stayed on that job site until 3:45 pm.

65. Leaving once the work is done is common practice for inspectors.

66. On May 22, 2020, Erickson was at a job site, and everyone started packing up to leave as the work was nearly complete.

67. Erickson saw McIntosh's vehicle on the site at about 2:30 pm.

68. McIntosh said, "I don't want to keep you if you're about to leave."

69. Erickson pointed out that the work was done for the day.

70. McIntosh mentioned to Erickson that they were going to have to have a meeting regarding timecards and submitting codes because some of the codes used were incorrect.

71. Erickson told McIntosh since he worked there, he always used the same codes, and no one ever told him he was entering his time incorrectly.

72.  McIntosh told Erickson they would work on it.

73. After Erickson and McIntosh's discussion regarding timecards, Erickson called the secretary in Tulsa, Oklahoma to check his timecards with her, and correct any errors he may have submitted.

74. On May 25, 2020, Erickson went to a meeting at the Fairborn Vectren office for a meeting regarding timecards.

75. When Erickson arrived at the meeting, Thornburgh, Clayton Fritz, McIntosh, and Chris Murray were present.

76. During the meeting on May 25, 2020, TIR told Erickson he was suspended for being late to job sites, holding up pertinent tasks, and leaving job sites early.

77. There was no basis for suspending Erickson's employment.

78. On May 29, 2020, McIntosh called Erickson to let him know his employment was terminated.

79. Prior to the May 25, 2020, meeting, Erickson was never written up and never received any type of discipline or counseling.

80. Upon information and belief, TIR has a progressive discipline policy.

81. Defendant violated its progressive discipline policy when it terminated Erickson's employment.

82. Upon information and belief, Defendant does not violate its own progressive discipline policy when it terminates the employment of Caucasians.

83. Defendant violated its own progressive discipline policy when it terminated Erickson's employment because of his race.

84. Defendant terminated Erickson's employment because of his race.

85. Erickson was targeted and treated unfairly because of his race.

86. Upon information and belief, Erickson's termination of employment resulted in the hiring of, or the retaining of an individual outside of Erickson's protected class.

87. As a result of the above, Erickson has suffered and will continue to suffer damages.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq*.

88. Erickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. Erickson is African American, and thus is in a protected class for his race.

90. R.C. § 4112 *et seq*. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

91. Defendant treated Erickson differently than other similarly situated employees based upon his race.

92. Defendant's termination of Erickson's employment was an adverse employment action against him.

93. Defendant's purported reason(s) for Erickson's employment termination was pretextual.

94. Defendant actually terminated Erickson's employment due to his race.

95. Defendant violated R.C. § 4112 *et seq*. by terminating Erickson's employment because of his race.

96. Defendant violated R.C. § 4112 *et seq*. by treating Erickson differently from other similarly situated employees outside his protected class.

97. Defendant violated R.C. § 4112 *et seq*. by applying its employment policies in a disparate manner based on Erickson's race.

98. Defendant violated R.C. § 4112 *et seq*. by applying its disciplinary policies in a disparate manner based on Erickson's race.

99. As a direct and proximate result of Defendant's acts and omissions, Erickson has suffered and will continue to suffer damages.

## <u>COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII</u>

100. Erickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

101. Erickson is African American, and thus is in a protected class for his race.

102. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

103. Defendant's treated Erickson differently than other similarly situated employees based upon his race.

104. Defendant's termination of Erickson's employment was an adverse employment action against him.

105. Defendant's purported reason for Erickson's employment termination was pretextual.

106. Defendant actually terminated Erickson's employment due to his race.

107. Defendant violated Title VII by terminating Erickson's employment because of his race.

108. Defendant violated Title VII by treating Erickson differently from other similarly situated employees outside his protected class.

109. Defendant violated Title VII by applying its employment policies in a disparate manner based on Erickson's race.

110. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Erickson's race.

111. As a direct and proximate result of Defendant's acts and omissions, Erickson has suffered and will continue to suffer damages.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

112. Erickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

113. Erickson is a member of a statutorily protected class based on his race under 42 U.S.C. § 1981.

114. TIR treated Erickson differently than other similarly-situated employees based on his race.

115. TIR discriminated against Erickson on the basis of his race throughout his employment with the company.

116. TIR terminated Erickson's employment on the basis of his race.

117. TIR's discrimination against Erickson based on his race violates 42 U.S.C. § 1981.

118. As a direct and proximate result of TIR's conduct, Erickson suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE IN VIOLATION OF R.C. § 4112 *et seq*.

119. Erickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

120. Erickson, as an African American, is in a protected class for his race.

121. During his employment with Defendant, Erickson was subjected to offensive and harassing conduct based on his race.

122. Defendant knew or should have known of the harassing conduct against Erickson.

123. Defendant condoned, tolerated and ratified this harassing conduct.

124. This harassing conduct was severe and/or pervasive.

125. This harassing conduct was offensive to Erickson.

126. This harassing conduct interfered with Erickson' ability to perform his job duties.

127. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Erickson.

128. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Erickson.

129. Erickson incurred emotional distress damages as a result of Defendant's conduct described herein.

130. As a direct and proximate result of Defendant's failure to promote Erickson based upon race discrimination, Erickson has suffered and will continue to suffer damages.

## COUNT V: HOSTILE WORK ENVIRONMENT
## ON THE BASIS OF RACE IN VIOLATION OF TITLE VII

131. Erickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

132. Erickson, as an African American, is in a protected class for his race.

133. During his employment with Defendant, Erickson was subjected to offensive and harassing conduct based on his race.

134. Defendant knew or should have known of the harassing conduct against Erickson.

135. Defendant condoned, tolerated and ratified this harassing conduct.

136. This harassing conduct was severe and/or pervasive.

137. This harassing conduct was offensive to Erickson.

138. This harassing conduct interfered with Erickson' ability to perform his job duties.

139. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Erickson.

140. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Erickson.

141. Erickson incurred emotional distress damages as a result of Defendant's conduct described herein.

142. As a direct and proximate result of Defendant's failure to promote Erickson based upon race discrimination, Erickson has suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands from Defendant the following:

a)  Issue an order requiring Defendant to expunge Plaintiff's personnel file of all negative documentation;

b)  An award against Defendant for compensatory and monetary damages to compensate Plaintiff for compensatory and non-compensatory damages, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c)  An award of punitive damages against Defendant in an amount in excess of $25,000;

d)  An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

e)  An award of the taxable costs of this action; and

f)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
Shashelia Degraffinried (101692)
**SPITZ, THE EMPLOYEE'S FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  daniel.dubow@spitzlawfirm.com
           kevin.buryanek@spitzlawfirm.com
           shelia.degraffinried@spitzlawfirm.com

*Attorneys For Plaintiff*

12

## **JURY DEMAND**

Plaintiff Kyle Erickson demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
Shashelia Degraffinried (101692)
**SPITZ, THE EMPLOYEE'S FIRM**

13